The next case today is United States v. Juan Anabel Patrone, appeal number 191486. Attorney Milligan, you may proceed. Good morning, Your Honors. My name is Leonard Milligan for Juan Anabel Patrone. May it please the Court, I'd like to reserve two minutes for rebuttal. You may. Starting with the Rahif presented issue and having listened to the Court's prior argument, it's clear that we are in the position as the petitioner of meeting a burden today. And that burden is essentially why is Juan Anabel Patrone more like Rahif than Burkhardt or even more recently Lara. For several reasons, I submit to you that he is colorfully more like Rahif. Not the least of which is his status as an alien and that being the predicate for his 922G conviction. Although that's not a categorical difference, it is a qualitative difference in many ways. As the Court was able to do in Burkhardt, relying on the vast intuition and experience that anybody practicing in criminal court has, there are procedures, there are statutes that require a defendant to be in the room, that require Burkhardt to be told about his punishments. Those same structures don't exist in the immigration context. It is clear that like Rahif, Mr. Patrone lawfully entered the United States. It is also clear that at the time of his arrest, he had two pending immigration petitions to adjust his status and as a family member of a lawful resident. Could you just clarify when those petitions were denied? It wasn't clear for me for the record if the petitions were denied before his arrest or after his arrest. The petitions were denied after his arrest. I based that on the one document available, which is an ERO memo from May 27, 2017, that merely highlights that he had pending petitions at the time of his arrest. That document is referenced in paragraph 196 of the PSR, which is contained in the supplemental appendix. So then he can reasonably argue that at the time of his arrest and before, he was not aware that he was not legally in the United States, or illegally in the United States. That is correct. I think if I understand what you're saying, you're distinguishing Burkhardt by saying here the evidence of his guilt or satisfaction of the missing uninformed element is not overwhelming, whereas in Burkhardt it was. Simply put, yes. And as you catalog well in that case, your honor, there is more than just the pronouncements that would have normally occurred. Mr. Burkhardt was actually an armed career criminal claiming that he was unaware of his felon status. That is radically different than a person who lawfully immigrated, who was in the process of securing a green card, having actual knowledge at the time of his offense, May 2017, that he was a prohibited person. So take as an assumed given that he had more of a shot at winning had he not on this count. But walk us then through what you say the sort of risk-benefit analysis is that he would have engaged in and how it would be different than the one that he did likely engage in. Because Burkhardt proceeds to look at that as well. If I interpret the court's question correctly, it is how can I prove he would not have pled guilty? No, I would say it this way. Armed with the knowledge that he might have had a defense that he didn't realize he had, what would he have thought he could gain by defending against that as opposed to what he could lose? And how would that calculus different than the one? In other words, would winning have affected his sentence? I just want to add to Judge Kayada's question, counsel. I mean, he's facing a drug charge. He was involved in what appears to be massive drug trafficking. The brief issue has nothing to do with that charge. That charge is still there, and his exposure on that charge is enormous, and it still remains. So with that in mind, I would be interested in how you respond to Judge Kayada's question. It's certainly accurate to say that a gentleman facing a 30-year drug-based guideline sentence might not be focused on the five-year mandatory minimum related to a drug charge. But there are several factors which contribute to why it was part of the calculus. The first, the government is correct to rebut our point in our brief that he might not have been fully safety valve eligible. But that was a categorical bar. That is to say, if he didn't have the gun conviction, the judge, not the prosecution essentially, would have had the opportunity to decide whether the other, the fourth and fifth factors under 3553F, were present in this case. Namely, that he was a leader. He would have been incentivized to litigate that issue where he was not otherwise. Because the presence of the safety valve is a driving factor for any defendant. And secondly, there are several collateral impacts that any person faces for a gun conviction that they don't face. On the leadership on that issue, the evidence seems to be overwhelming that he was a leader. I mean, I don't know how, in any sort of calculus, he could think that he could possibly prevail on that issue. It is absolutely accurate that the evidence was substantial. But I would suggest to you, it was almost entirely derived from Giglio and Jenks material that the government has historically been limited in its willingness to present during sentencing. Where someone's already admitted to culpability, the reluctance to present those types of witnesses, which would have been necessary if we litigated this issue, may have provided him an avenue. And I'm not saying all the bricks on the wall exist because this one brick exists. But it is a combination of factors. For example, if the firearm possession case weren't available, he may have, the Board of Prisons would have discretion as to whether he could have done the RDAP program. This is something that defendants are frequently faced with and are well aware of. Is there something that the gun conviction will prevent me from doing in the future? So, the gun played an active role in the calculus, not in what the final sentence will be, but what all the collateral impacts would be of his convictions, as well as his expectations for program availability and release. I want to point out this is before the First Step Act, so he was not categorically excluded by statute from many of the programs that were then available. Counselor, I'm still trying to figure out if it's your position that he was in legal status before his arrest. He was not in legal status, Your Honor. There was a time when filing the concert, in concert, the Form 330 and the Form 495 or 485 would have prevented you from deportation, which is something that immigrants, you might imagine, somebody without the benefit of counsel, could conflate for lawful status. But even at the time of his arrest, that was not the current state of immigration law. But your argument is you don't care. He could be as illegal as possible. The question is, did he know it? Correct. And unlike, I keep turning to Burkhardt, it seems that the court might agree that he does have material differences from Burkhardt. The ease for which the government might have proven it if he chose to dispute it is far less in this instance. That's time. Any other questions? Thank you, Counselor. Thank you, Your Honors. Attorney Heinrich. Good morning, Your Honors. May it please the Court. Attorney Heinrich on behalf of the government. I'd like to just jump in and go to the point that was most discussed during the argument. And that is, what was Mr. Cron's decision calculus? Had he been advised that he had to know that he was unlawfully present? And because this is clearly not a case of overwhelming evidence, and in fact, the record is unclear as to what his knowledge may have been. But the fact of the matter is he had nothing to gain and everything to lose because his sentence, he faced a 20-year mandatory minimum on the drug charge alone. He ended up getting a 22-year sentence. His guidelines, as the government's brief pointed out, would have been exactly the same whether he actually had a conviction related to the firearm or whether the firearm was simply relevant conduct. And there's no question, well, this record seems pretty plain that the calculus of challenging the supervisory role and the firearm role would have not changed whether or not he actually had this conviction for the firearm possession. Counsel, excuse me. Counsel, this was an open plea, was it not? Yes. So that's, when you're talking about the considerations that might have altered the decision to plea, usually you look at the plea agreement and see what he got and what he gave up. I mean, doesn't that analysis change considerably when you're dealing with an open plea? Does it make it harder to try to reconstruct what the calculus might have been if he had known about the C-enter issue? Does it change the analysis at all? Well, I don't think so in this particular case, Your Honor, because the defendant had no open avenues to improve his situation. The fact that he had this conviction for the firearm, again, he would have, the problem that he might have faced would be gaining acceptance of responsibility. He would have put that at risk without any reasonably foreseeable potential gain because the evidence was overwhelming that he possessed a firearm. It was found in his bedroom. The evidence was overwhelming that he was a supervisor. So he was not eligible for this ADL. He would have had the same guideline range. And I think this court can find that his incentives were such that this was not an issue worth litigating for him. How far would you take this pragmatic sort of calculation? In other words, let me change the case. Suppose that the evidence here was overwhelming that he did not know that he had an unlawful status. Suppose he had a letter from an immigration lawyer confirming for him it's not unlawful. Wrongly, but. So it was absolutely clear he was innocent if this he had been decided beforehand. Would we then say he being factually innocent pleaded guilty because he didn't have anything to gain by pleading not guilty? Well, it's a good question, Your Honor, and I have given it some thought. You know, if you're talking about a claim of actual innocence, then it seems to me. I mean, I suppose it changes the calculation of the third prong, but I'm not sure that it changes the calculation of the fourth prong. And let me put a finer point on that. On the third prong, you may reasonably find, well, if the guy knows that he's actually innocent, we would hope that he wouldn't plead guilty just to get some benefit at sentencing. But on the fourth prong, it seems to me that whether the court chooses to recognize this error, I do think the record is absolutely clear from how the sentencing was conducted that the fact of the conviction alone had no impact on the sentence. And that there was so that there's no there's no serious seriously affected the fairness of the proceedings. Beyond that, I thought the court said that it used the plea to the felon possession to to orient its sentence. Didn't it? Didn't it say that that conviction sentence was was very important in the way it approached the sentencing? No, it said it said the guidelines calculation and the guideline range of it was three hundred and twenty four, three hundred and twenty four months of four hundred and five months. That played an important consideration because an accurate consideration of the guideline range was important. And the firearm, the possession of the firearm was included in the guideline range. But that would have been the case whether or not he had actually been convicted of a firearm offense because the firearm was clearly part of the drug trafficking. So so so excuse me. So if he had not been convicted of the gun possession, but it would have been an appropriate sentencing consideration for the court, would that in and of itself make the defendant ineligible for the programs that he says he's categorically ineligible for now in prison? I honestly don't know your honor, because that hasn't been raised in his briefs. And I mean, I don't know the answer to that question. I would I would say that he'd waive that claim, but I honestly don't know the answer to that question. If it did, would it be something that we would consider? Probably. Three or four. A player. Well, probably both. OK, because if if if. If it had been if it had been thought about below or if it had been a consideration below or if there was some evidence in the record below that he had been concerned about that, then presumably it would have affected his plea. But, you know, I don't want to overrate things, but the other the other aspect of the fourth prong is that, you know, in Rahafe, the defendant was convicted only of a firearm offense. And the offense itself was he was an illegal. He was unlawfully in the United States, but he used a firearm at a shooting range here, by contrast. And the Supreme Court was concerned that his use of the firearm, that the circumstances were such that he may not have known his possession of the firearm was wrongful. Here, by contrast, Mr. Petrone was a drug dealer. He certainly must have known that whether or not it was the conduct actually ran afoul of 922. He certainly must have known that as a drug dealer, his possession of a firearm was wrongful. So there's not that consideration in this case. If there are no further questions, I'm happy to rest. Oh, I would just point out in terms of the Gary decision, which the defendant relied on in his reply brief and which Mr. Circuit from this, but probably also from the Seventh Circuit, the Fifth Circuit and the Sixth Circuit. And even in the Fourth Circuit itself that decided Gary, there was a petition for en banc that en banc decision was the petition was rejected. But five of the judges took the opportunity to say that they were concurring in not having the en banc decision because they so strongly disagreed with the panel decision. And they didn't want any delays in the Supreme Court's consideration of the case to resolve the conflict between the circuits. And I think if the courts were to compare the Gary decision reasoning with, for example, the Trujillo court and the Tenth Circuit's reasoning, the Trujillo court's reasoning was far more appropriate. Thank you, Your Honors. Thank you, Counselor. Attorney Milligan. Thank you, Your Honors. If I may, just a few points in rebuttal. The first is that the government has today, and they did in their pleadings, essentially engage in what Justice Alito in his dissent in Rahif called the boulderizing of the facts of Rahif. The truth is Rahif was somebody who enrolled in school to get a student visa, but essentially never attended and instead checked in and out of hotels with cash, daily firing firearms. And it was alleged by the FBI at the time that he kept the firearms in the hotel, each time insisting on an eighth floor view of an airport. That is to say that there were other facts in Rahif that didn't make him a completely innocent person who was otherwise unaware that he was up to something, which Mr. Heinrich suggests is no good. In this case, it is a drug dealing case. In that case, it might have been something more nefarious. Both cases imply that neither person had a pure mind. The second point I would make is that Mr. Heinrich points out that Mr. Patron would have sacrificed the three points for acceptance of responsibility had he gone to trial on the gun count. That presupposes that Mr. Patron would have lost that. Because if he was only being sentenced on what he was in fact guilty of, which was the drug charges, he would have pled to that count. We're not trying to disturb that. He would have at least had the two points. The government may have elected to try to withhold the third point, and that would be at their discretion presumably. The last point I would make is that Mr. Heinrich repeatedly suggests that the gun played no role in the sentence. Yet, the transcripts clearly reveal that Mr. Heinrich relied on it during the argument to the court about sentencing. The record appendix at page 102, you can hear Judge Woodlock talking about the significance of guns. He specifically states that the sentencing commission prompted by Congress, and I suspect the general public, feels quite agitated about the presence of guns as well. Even without a conviction, the court could have used his possession of the gun as a sentencing consideration. That is true, and I suspect that at the lower standard for sentencing, he might have even gotten that two point enhancement to his score. I submit to you that that is different than the presence of a conviction for a firearm. So that would be... What's the difference in this case? In this case, the difference would be that the court was then armed with... There seems to be this specter that the gun was used in furtherance of the drug crime, and therefore aggravates it. The government never charged him with anything. I think it's a fair inference that the presence of the firearm was more innocuous than the specter continuously raised that the firearm was part and parcel of the drug trade. I don't think that greatly answers your question, but it's probably the best I can do, Your Honor. Okay, thank you. Any additional questions? No. Thank you, Counselor. Thank you, Your Honor. That concludes argument in this case.